# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BECKY B.,**[1] | Case No. 6:21-cv-1110-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Laurie B. Mapes, Attorney at Law, P.O. Box 1241, Scappoose OR 97056; and Luke Moen-Johnson, DREW L. JOHNSON, P.C.,1700 Valley River Drive, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Heidi L. Triesch, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Becky B. brings this appeal challenging the decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) under Title II of the Social Security Act (Act). The Commissioner denied Plaintiff's benefits at step two of the five-step sequential analysis to determine disability. After evaluating the decision of the Administrative Law Judge (ALJ), the Court reverses and remands for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In other words, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

If the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB on July 6, 2015, alleging a disability onset of October 1, 2014, and that she had to stop working because of her disability. AR 60, 160. She was 57 years old at the time of her alleged disability onset. AR 24. Plaintiff had worked consistently until she was laid off from her job as a manager of a septic tank maintenance company in October 2014. AR 160-61. Plaintiff testified that she was laid off from her job because she was not working, arriving late, leaving sporadically, "disturbing everyone," and was forgetful. AR 41. Her employer stated that she demonstrated "50% or less of other employees' productivity." AR 167.

The Commissioner denied Plaintiff's claim initially and upon reconsideration. AR 67, 76. ALJ John D. Sullivan heard Plaintiff's case on November 15, 2017. AR 35. ALJ Sullivan issued a decision dated March 6, 2018, concluding that Plaintiff was not disabled. AR 12-29. Plaintiff appealed, and the Appeals Council denied review on December 31, 2018, making ALJ Sullivan's decision the final decision of the Commissioner. AR 1-6. Plaintiff appealed that decision to this Court. On March 16, 2020, the Court reversed the ALJ's decision and remanded Plaintiff's claim to the Commissioner for further proceedings, in part because the ALJ had not considered the assessment of Plaintiff's treating psychiatrist. AR 495-519. On remand, ALJ Sullivan again denied Plaintiff's claim for benefits, issuing a new decision on March 31, 2021. AR 396-411. The ALJ's decision became final on May 31, 2021, when the Appeals Council denied review. AR 394. Plaintiff appeals that decision to this Court. This is the second time that this Court has considered Plaintiff's application for DIB.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20

C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

A claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter, the ALJ found that Plaintiff met the insured status of the Act through June 30, 2019. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 1, 2014, through her date last insured of June 30, 2019. At step two, despite finding that Plaintiff had medically determinable impairments, the ALJ found that Plaintiff did not have a severe impairment or

combination of impairments that would limit her ability to perform basic work-related activities for 12 consecutive months. 20 C.F.R. §§ 404.1521 *et seq*. If a claimant does not have a severe impairment, the sequential evaluation process ends. The ALJ thus concluded that Plaintiff was not under a disability within the meaning of the Act from October 1, 2014, through June 30, 2019. 20 C.F.R. § 404.1520(c). The ALJ's analysis at step two differed from his 2018 decision, in which the ALJ found that Plaintiff had severe impairments. AR 17-18. In that decision, the ALJ rejected Plaintiff's claim at step five. After assessing Plaintiff's RFC, the ALJ in that decision concluded that Plaintiff was not disabled because Plaintiff could perform the requirements of certain unskilled occupations. AR 24-25.

## DISCUSSION

Plaintiff argues that the ALJ erred in four ways: (a) by finding no severe impairments at step two; (b) by rejecting the opinions of Plaintiff's treating psychiatrist, Nicholas Telew, M.D.; (c) by rejecting Plaintiff's reported symptoms, and (d) by failing properly to evaluate lay testimony. The Court considers each argument in turn.

## A.  Assessment of Evidence at Step Two

Plaintiff argues that the ALJ erred in rejecting her claim at step two by determining that Plaintiff did not suffer a severe impairment. Plaintiff points to the *de minimis* standard required for claims to move past step two and suggests that the ALJ committed legal error by applying the incorrect standard. Plaintiff also argues that she provided objective evidence of the severity of her impairments sufficient to meet her burden of proof.

### 1.  Standards

At step two of the sequential evaluation process, the ALJ determines whether the claimant has one or more impairments (or combination of impairments) based on review of the medical record, and then determines whether these impairments are "severe." *See* 20 C.F.R.

§§ 404.1520(a)(4)(ii), 404.1521. An impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c). It is Plaintiff's burden to prove that these impairments or their symptoms affect her ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). A severe impairment also must meet the durational requirement under the Act, which means the impairment has lasted, or be expected to last, 12 months or more. 20 C.F.R. § 404.1509. Finally, Plaintiff must establish disability before the date last insured. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1458 (9th Cir. 1995). Any deterioration in her condition after that date is irrelevant. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (stating that step two is a "de minimis screening device" to "dispose of groundless claims" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996))). "Ample authority cautions against a determination of nondisability at step two." *Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011); *see also Bowen*, 482 U.S. at 153 (noting that step two is intended to identify "claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled").

Accordingly, the severity analysis within step two is a "low bar" to clear. *Gardner v. Astrue*, 257 Fed. App'x. 28, 29 (9th Cir. 2007). "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at 1290) (emphasis added in *Webb*). As a result, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his [or

her] conclusion is clearly established by medical evidence." *Id.* at 687 (quotation marks omitted). "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.* In other words, there must be "substantial evidence to show that [the claimant's] claim was 'groundless.'" *Id.* at 688.

To determine the severity of an alleged mental impairment, the ALJ must follow the "psychiatric review technique" required by 20 C.F.R. § 404.1520a. *See Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012) ("When evaluating psychiatric impairments . . . the ALJ must follow a 'special psychiatric review technique' and document his findings and conclusions in his decision."). That technique requires the ALJ to determine first whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). The ALJ then must assess the degree of functional limitation resulting from the impairment by considering the four broad functional areas from the "paragraph B" criteria used in evaluating mental disorders in the Listing of Impairments at step 3. 20 C.F.R. § 404.1520a(b)-(c). These four categories are: (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself. 20 C.F.R. § 404.1520a(c); 20 C.F.R., Part 404, Subpart P, Appx. 1. After rating the degree of loss, the Commissioner must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 404.1520a(d). If the paragraph B criteria are found to be no more than mildly limited, the mental impairments are considered not severe. 20 C.F.R. § 404.1520a(d)(1).

### 2. Application

At step two, the ALJ reviewed the medical evidence, some lay witness reports, and Plaintiff's subjective testimony. The ALJ discounted the evidence from Plaintiff, her family

members, and her treating providers, in favor of the evidence from the testifying medical expert,

agency consultative examiner, and agency consultative reviewers. The ALJ then conducted the

psychiatric review technique. The ALJ found the medically determinable impairments of

polysubstance abuse, hepatitis C, persistent depressive disorder, major depressive disorder,

unspecified personality disorder, and dysthymic disorder. The ALJ, however, concluded that

these impairments were not severe. Plaintiff contends that the ALJ erred in forming this

conclusion and rejecting Plaintiff's petition at step two.

The Court now considers whether the ALJ's step two conclusion is supported by

substantial evidence. To reject Plaintiff's claim at step two, the ALJ necessarily determined that

Plaintiff presented a "total absence of objective evidence of severe medical impairment" and that

Plaintiff's claim was "groundless." *Webb*, 433 F.3d at 687-88. The ALJ's determination that

Plaintiff failed to show that she has more than a "slight abnormality" with more than a minimal

effect on her ability to do basic work activity is not supported by substantial evidence.

The record contains significant objective evidence of the limiting effects of Plaintiff's

claimed impairments. First, there is evidence of abnormal mental status examination findings.

Mental status examination findings such as "flat or depressed affect" and "depressed and irritable

mood" can reverse a step-two conclusion that no severe mental impairment is "clearly

established by medical evidence." *See Shields v. Saul*, 2020 WL 1182601, at *8-9 (E.D. Cal.

Mar. 11, 2020). Here, treatment records from Plaintiff's therapist James Goerg, M.S. note his

objective observations of abnormal mental status during the relevant period, including anxiety,

depressed mood, depressed thought content, tension, tearfulness, irritable mood, and sad or

blunted affect. *See, e.g.*, AR 382 (09/18/2014 chart note stating that Plaintiff is "tense and

unhappy" with depressed thought content and "signs of anxiety"). Every one of Mr. Goerg's

twenty mental status exams during Plaintiff's eight months of therapy includes similar objective observations. AR 343, 349, 351, 353, 356, 358, 359, 361, 363, 364, 366, 368, 370, 372, 374, 376, 380, 382, 384, 386. Treatment records from Nicholas Telew, M.D., Plaintiff's treating psychiatrist, also indicate similar abnormal mental status findings around her alleged disability onset date. AR 286, 993, 995, 998, 1008, 1009 (describing Plaintiff as "Depressed," "Irritable," or "Anxious").

Second, Dr. Telew, assessed in 2017 and 2020 that Plaintiff exhibited moderately severe functional limitations that would cause her to be off-task fifteen percent of the workday. AR 656-59; 660-63. Vocational experts testified that that this extent of off-task activity precludes competitive employment. AR 56, 457. Third, Plaintiff's former employer stated that Plaintiff was no more than half as productive as other employees. AR 166-68. Fourth, Plaintiff's brother, Clint B., wrote detailed and specific descriptions of Plaintiff's progressive deterioration. AR 198-205, 243-45, 518. Along with this objective evidence, Plaintiff presents subjective evidence of her mental health decline and inability to work. *See, e.g.*, AR 182 (Plaintiff's Function Report, explaining how a major depressive episode left Plaintiff unable to focus or retain information and she was from that point unable to hold a job). Other evidence can "bear on evaluations of medical evidence [at step two] when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions." *Webb*, 433 F.3d at 688.

Based on this record evidence, the ALJ's decision that Plaintiff failed to meet her burden at step two is not supported by substantial evidence. The ALJ and the Commissioner appear to countenance the ALJ's weighing of Plaintiff's evidence and discounting that evidence in favor of other record evidence. That, however, is not the standard at step two. Step two eliminates

"groundless" claims that contain no supporting record evidence. *Webb*, 433 F.3d at 687-88.

Courts have affirmed denials at step two when the medical evidence lacked any diagnosis or any

opined limitations. *See, e.g.*, *Smith v. Kijakazi*, 2022 WL 2662883, at *3 (9th Cir. July 11, 2022)

(upholding a denial at step two because the diagnosing psychiatrist opined that the plaintiff was

able to work even with his impairment); *Delanoy v. Berryhill*, 697 F. App'x 917, 919 (9th Cir.

2017) (affirming denial at step two where the ALJ relied on the absence of record medical

evidence that migraines caused severe limitations in the claimant's ability to perform basic work

activities); *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (affirming denial at step two

when the claimant's doctors did not make any formal diagnosis); *see also Saelee v. Chater*, 94

F.3d 520, 522 (9th Cir. 1996) (observing that impairments were appropriately found non-severe

because no physician had been able to find a link between Saelee's "extremely vague"

complaints and known medical pathologies). Unlike in *Smith*, *Kelanoy*, *Ukolov*, and *Saelee*,

where claimants lacked a diagnosis or a link to their ability to work, Plaintiff's treating

psychiatrist diagnosed known medical pathologies and found that she had moderately severe

mental functional limitations impacting her ability to work, and a former employer described her

productivity as half that of other employees. Additionally, the Commissioner's argument fails

because the ALJ impermissibly discounted the other record evidence, as discussed in Sections B,

C, and D below. Further, although the ALJ discounted Plaintiff's mental limitations in evaluating

the Paragraph B criteria at step two, as discussed below, that analysis was not supported by

substantial evidence. The ALJ thus erred by finding that Plaintiff's depression was non-severe at

step two.

**B.  Medical Opinion Evidence**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject the

opinions of Dr. Telew, Plaintiff's treating psychiatrist for more than 30 years. Dr. Telew twice

issued a "Mental Residual Functional Capacity Assessment," once in 2017 and again in 2020.

Dr. Telew concluded that Plaintiff has multiple mental functional limitations that would cause

her to be off-task fifteen percent or more of workdays.

The Court agrees that the ALJ improperly discounted Dr. Telew's opinions by placing

improper reliance on the non-consultative medical expert, state agency consultants, and

consultative examiner. As a result, the ALJ's decision is not supported by the substantial

evidence to conclude that medical evidence *clearly* shows Plaintiff's impairment is only a "slight

abnormality," and the ALJ's rejection at step two was improper.

### 1. Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among doctors' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th

Cir. 2008). The Ninth Circuit and the Commissioner distinguish between the opinions of three

types of doctors: treating doctors, examining doctors, and non-examining doctors.[2] *Garrison v.*

*Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "Generally, a treating physician's opinion carries

more weight than an examining physician's, and an examining physician's opinion carries more

weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th

Cir. 2001); *see also* 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is supported

by medically acceptable techniques and is not inconsistent with other substantial evidence in the

record, a court gives the treating physician's opinion controlling weight. *Holohan*, 246 F.3d

at 1202; see also 20 C.F.R. § 404.1527(d)(2). A court may reject a treating doctor's

uncontradicted opinion only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc.*

---

[2] Because Plaintiff filed her application before March 17, 2017, the application is governed by 20 C.F.R. § 404.1527, and the revised rules relating to the consideration of medical opinion testimony do not apply.

*Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If the opinion of another physician contradicts a treating doctor's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

"The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *superseded on other grounds by regulation*, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416); *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. §§ 404.1527(c)(1). As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the opinion of an examining physician, the ALJ must provide "specific, legitimate reasons . . . supported by *substantial record evidence*" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 831 (emphasis added in *Lester*) (quoting *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995)). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts*, 66 F.3d at 184.

Specific, legitimate reasons for rejecting a doctor's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more

persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1012-13; *see also Smolen*, 80 F.3d at 1286 ("[The ALJ] did not discuss the opinions Dr. Smolen and Dr. Hoeflich offered in other letters. By disregarding those opinions and making contrary findings, he effectively rejected them. His failure to offer reasons for doing so was legal error.").

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions mirror independent clinical findings or other evidence in the record).

### 2. Application

The opinions of examining psychologist Claudia Lake, Psy.D. and reviewing and testifying expert Ricardo Buitrago, Psy.D. contradict the opinions of treating psychiatrist Dr. Telew. Dr. Lake examined and assessed Plaintiff once, concluding that she had a "poor" prognosis for work but that she "would not have difficulty" in certain work-related areas. AR 282. Dr. Buitrago reviewed Plaintiff's records and concluded that she had no limitation in understanding, remembering, and applying information; had mild limitation in interacting with others; had mild limitation in maintaining concentration, persistence, and pace; and had no to

mild limitation in adapting and managing oneself. AR 450-51. Dr. Buitrago found Plaintiff had

no functional limitations. AR 451.

Plaintiff applied for benefits before March 27, 2017, and thus the previous rules apply to

Dr. Telew's opinion. 20 C.F.R. § 404.1527. Because Dr. Telew's opinion is contradicted, the

ALJ must provide "specific and legitimate reasons that are supported by substantial evidence" in

weighing conflicting medical opinions. *Lester*, 81 F.3d at 830-31; *see also Ford v. Saul*, 950

F.3d 1141, 1154 (9th Cir. 2020).

The ALJ gave little weight Dr. Telew's treating doctor's opinion, finding that it was not

supported by Dr. Telew's own treatment notes and was inconsistent with the opinions of Drs.

Lake and Buitrago, and the state agency consultants, the opinions of all of whom he gave greater

weight. AR 402. The ALJ primarily relied on Plaintiff's purportedly "consistently normal mental

status" examinations as inconsistent with Dr. Telew's opinion and consistent with the opinions of

Drs. Lake and Buitrago.

The ALJ's discounting of Dr. Telew's opinion was not supported by substantial evidence

for four reasons: (1) concluding that Plaintiff's mental status examinations were "normal" is not

a specific and legitimate reason that is supported by substantial evidence in the record, (2) the

ALJ placed improper reliance on Dr. Buitrago's testimony, (3) the ALJ erred in according great

weight to Dr. Lake's opinion, and (4) the ALJ erred in according great weight to the agency's

psychological consultants.

First, the ALJ erred in concluding that Plaintiff's mental status exams were consistently

within normal limits. This conclusion is neither accurate on the record nor a specific and

legitimate reason to reject Dr. Telew's opinions. Dr. Telew's treatment notes during the alleged

disability period often document depressed mood. AR 286, 993, 995, 998, 1008, 1009. Plaintiff's

therapist James Goerg, M.S., who was consulting with Dr. Telew, documented his observations of depressed mood and anxiety during each of Plaintiff's twenty visits. AR 343-86. Between August 2014, when Plaintiff began therapy with Mr. Goerg, through the close of the record, Plaintiff saw Mr. Goerg 23 times, 17 of which were after the alleged onset date. Plaintiff saw Dr. Telew 18 times after the alleged onset date. Two-thirds of those encounters produced objective observations of Plaintiff's symptoms. *See* AR 247-52, 334-86, 990-1047.

The Commissioner argues that the mental status examinations from those sessions "document normal functioning," citing to parts of the record that do not support the ALJ's conclusion. *See* ECF 11 at 10 (citing, *e.g.*, the mental status exam in AR 349, in which Plaintiff "presents as friendly, attentive, communicative, casually groomed, . . . but tense. Signs of mild depression are present. Thought content is depressed. Facial expression and general demeanor reveal depressed mood. . . . [Plaintiff]'s behavior in the session was cooperative and attentive with no gross behavioral abnormalities"). Being friendly with casual grooming and the absence of gross behavior abnormalities do not provide substantial evidence that Plaintiff was functioning normally. As a result, the ALJ's statement that Plaintiff's mental status examinations were "consistently normal" is not supported by substantial evidence and contradicted by the actual content of the mental status examination findings.

The "consistently normal" rationale also is not specific and legitimate reason to reject Dr. Telew's opinions. The ALJ must provide rationale that is specific enough to allow for meaningful court review. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ concluded that Dr. Telew's severity limitation opinions were inconsistent with Dr. Telew's own treatment records. But the ALJ failed to state exactly *how* Dr. Telew's functional limitation opinion conflicted with his treatment records. The ALJ references Dr. Telew's description of the

claimant as "stable," but does not address how stability, or a lack of change, contradicts Dr. Telew's specific findings on limitations. Stability does not necessarily conflict with Dr. Telew's assessment that Plaintiff has moderate to moderately severe limitations in nine mental work functions. *See* AR 656-63. A person can be stable (*i.e.*, not fluctuating) but low functioning. Indeed, Dr. Buitrago even noted while testifying that Dr. Telew referenced Plaintiff as "stable" in the same notes as referencing her with a "depressed mood." AR 448.

Although an ALJ may rely on a rational interpretation of the evidence, *Burch*, 400 F.3d at 679, the conclusion here fails short of the specificity required under *Embrey*, 849 F.2d at 421-22. "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Garrison*, 759 F.3d at 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Under this standard, the ALJ's unexplained, conclusory opinion that Plaintiff was "consistently normal" cannot support the ALJ's ultimate determination to limit the weight provided to Dr. Telew's opinion.

Second, the ALJ erred by giving great weight to Dr. Buitrago's opinion. The testimony of a non-examining medical advisor may *support* an ALJ's rejection of an examining doctor's conclusions but cannot *by itself* constitute substantial evidence that justifies the rejection of the opinion of an examining doctor. *See, e.g.*, *Morgan*, 169 F.3d at 600, 602; *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Lester*, 81 F.3d at 831 (the opinion of a non-examining doctor cannot by itself serve as substantial evidence to support rejection of a treating doctor's opinion); *see also Sanchez v. Apfel*, 85 F. Supp. 2d 986, 991-92 (C.D. Cal. 2000) (non-examining physician's finding that claimant's depression was not severe did not constitute substantial evidence where claimant's treating physicians had diagnosed major depression). The ALJ appears to have based his interpretation of the record on the medical expert's opinion, and based

the weight to give other consultants' opinions with their consistency with the medical expert's opinion. *See* AR 401-02. This is an improper weighing of the evidence under *Lester*.

Moreover, Dr. Buitrago's opinion is itself questionable. Dr. Buitrago mentioned Plaintiff's treatment notes from Dr. Telew from August 2014 through July 2019, but then referenced her "six months" with Mr. Goerg from August 2014 through April 2015 (eight months) and stated that Plaintiff "only participated in psychological services for six months out of those five years." AR 448. Dr. Buitrago did not identify the "six month period" or the "five year period." If he intended to mean the dates, then Plaintiff had eight months of therapy and not six. If he intended to reference the dates but only after the alleged disability onset date of October 1, 2014, then the date range of five years is not accurate. So either way the Court is unclear on the date range Dr. Buitrago was discussing. Regardless, Plaintiff had ongoing treatment with Dr. Telew throughout 2014 through 2019 that both Dr. Buitrago and the ALJ appeared to disregard. The ALJ took Dr. Buitrago's purported six-month-only psychological treatment with *Mr. Goerg* and cited it as a reason to discount *Dr. Telew's* limitations, despite Plaintiff's ongoing treatment with *Dr. Telew*.

Dr. Buitrago also relies on GAF scores. AR 449. The ALJ gives "limited weight" to GAF scores, noting these scores are no longer in use for lack of reliability and poor clinical utility. AR 402-03; *see also Olsen v. Comm'r Soc. Sec. Admin*, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016) ("The DSM-V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" (quoting DSM-V, 16 (5th ed. 2013))). Dr. Buitrago also points to lack of psychiatric hospitalization when concluding Plaintiff had low complexity of care. But this reasoning is legally irrelevant, because "[w]hen a plaintiff has received mental health treatment,

courts regularly reject a lack of psychiatric hospitalization as a specific and legitimate reason to discount a medical provider's opinion." *David D. v. Saul*, 405 F. Supp. 3d 868, 881 (D. Or. 2019).

Beyond these problematic aspects of his testimony, Dr. Buitrago additionally spotlights what he characterizes as the "minimal psychological treatment services" for Plaintiff based on her visits to Dr. Telew and Mr. Goerg over the "five-year period." Plaintiff was treated by Dr. Telew from 1996 through 2020, and Mr. Goerg from August 2014 through April 2015. Plaintiff had 31 visits with Dr. Telew and Mr. Goerg during the insured period after the alleged onset date. She had 38 visits if you count all the months referenced by Dr. Buitrago, June 2014 through July 2019, but those include months before the alleged onset date.

If this frequency is indeed a departure from recommended treatment for Plaintiff's impairments, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before rejecting testimony. *See Smolen*, 80 F.3d at 1284. Such reasons may have included, for example, Plaintiff's reported inability to leave the house except for grocery runs. AR 47, 186, 432. While it is true that Plaintiff failed to return to individual therapy for her depression after April 2015, AR 345, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24 (quotation marks and citations omitted). Plaintiff also continued to receive medical management treatment with Dr. Telew. As a result, the ALJ erred in assigning such great weight to Dr. Buitrago's opinion without conducting a more complete assessment.

Third, the ALJ erred in giving great weight to Dr. Lake's opinion. Dr. Lake diagnosed Plaintiff with major depression, persistent depressive disorder, and "[u]nspecified personality disorder with narcissistic, histrionic and borderline traits." AR 281. In her functional assessment,

Dr. Lake found no more than mild limitations in a list of certain work-related functions, though she expressed no opinion on Plaintiff's ability to maintain attention and concentration for extended periods. AR 282. Dr. Lake's opinion, however, is internally inconsistent. Dr. Lake noted that she needed to re-direct Plaintiff multiple times during the examination, and that, in a memory test, Plaintiff could only recall one out of three objects after a five-minute delay. AR 280. Dr. Lake also stated that "[i]t is more than likely due to her fixed beliefs, she could potentially sabotage her ability to work. Her prognosis is poor." AR 282. The ALJ in 2018 had concluded that Dr. Lake's assessment of no functional limitations was "internally inconsistent with observations from the in-person evaluation that the claimant needed to be redirected" and "inconsistent with the record as a whole." AR 23.[3] The ALJ appears to have changed his opinion primarily because of the testimony of Dr. Buitrago, and now accords the previously discounted opinion great weight. AR 402. It is true that Dr. Lake's opinion could constitute substantial evidence to counter Dr. Telew's opinion because it relies on her own objective findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). But because of these internal inconsistencies, Dr. Lake's opinion fails to meet the standard of "substantial record evidence" to discredit the examining doctor's opinion. *Lester*, 81 F.3d at 831.

Fourth, for similar reasons, the ALJ erred in giving great weight to the agency's psychological consultants, Scott Kaper, Ph.D., and Ben Kessler, Psy.D. These consultants reviewed Plaintiff's file when she applied for benefits and found only non-severe medically determinable mental impairments. AR 65, 74. In his 2018 decision, the ALJ assigned only partial weight to these opinions because they did not review additional medical evidence indicating that

---

[3] The Commissioner states that the findings in that vacated decision do not bind the ALJ here. *See e.g.*, *Warren B. v. Comm' r Soc. Sec.*, 2020 WL 3397257, at *6 n.3 (W.D. Wash. June 19, 2020). Although not binding, the ALJ's explanation in 2018 accords with this Court's analysis, and thus the ALJ's turnabout deserves mention.

Plaintiff was more limited than they determined. AR 23. In his 2021 decision, the ALJ described

the consultants as "experts" and concluded that their opinions were "consistent with medical

evidence," offering no further explanation. AR 402. The ALJ again appears to have changed his

opinion in reliance on Dr. Buitrago's medical expert testimony. *Id.* The great weight given to

these opinions is unsupported by the record for the same reasons the ALJ identified in 2018: the

consultants' opinions did not consider and are not supported by all the evidence.

In sum, the ALJ failed to provide legally sufficient reasons to reject the opinion of

Dr. Telew. The ALJ's explanation of "mental status exams consistently within normal limits,"

AR 401, is not a "specific and legitimate reason[] that [is] supported by substantial evidence" for

discrediting the examining doctor's opinion. *Lester*, 81 F.3d at 831. The ALJ places improper

weight on the opinions of Dr. Buitrago, Dr. Lake, and the agency's psychological consultants. As

a result, the ALJ failed to fully consider Dr. Telew's opinion that Plaintiff has limitations in key

mental work functions such that she would be off task in a work setting fifteen percent or more

of workdays. *See* AR 656-63. Therefore, the ALJ's decision to reject Plaintiff's claim at step two

is not supported by the requisite substantial evidence to conclude that medical evidence clearly

shows Plaintiff's impairment is just a "slight abnormality."

**C.  Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ provided no specific, clear, and convincing reason supported

by substantial evidence to reject Plaintiff's reports of her own symptoms. Plaintiff reported poor

concentration, confusion, inability to retain new information, inability to be punctual or reliable,

and difficulty being around people, impacting her ability to work. AR 42-46, 182-89, 432-45.

The Court agrees with Plaintiff that the ALJ erred in rejecting Plaintiff's subjective reports.

### 1.  Standards

"Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). ALJs err when they fail to provide "specific, clear, and convincing reasons" for discrediting a claimant's testimony of her symptoms. *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen*, 80 F.3d at 1281).

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the

argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

### 2. Application

The ALJ did not point to any evidence of malingering, and therefore, the "specific, clear, and convincing" standard from *Smolen* and *Garrison* applies. The ALJ fails to meet that standard when rejecting Plaintiff's allegations that her impairments significantly limited her ability to perform basic work-related activities. In analyzing the paragraph B criteria, the ALJ rejected Plaintiff's testimony about her limitations. AR 403-04. Plaintiff had testified that she had difficulties with memory, comprehension, concentration, ability to follow instructions, and ability to complete tasks. AR 403. The ALJ rejected this testimony based on Plaintiff's daily living activities and as unsupported by the medical evidence.

#### a. Daily Living Activities

The ALJ found that Plaintiff's ability to "perform simple maintenance, prepare meals, pay bills, shop, drive, and read" and "watch TV, read, . . . manage funds," and engage in "adult paint-by-numbers" contradicted her testimony about her memory, comprehension, ability to follow instructions, and ability to complete tasks. AR 403-04. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily

activities to discount subjective symptom testimony, the activities need not resemble full-time

work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated

to receive disability benefits, and completion of certain routine activities is insufficient to

discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not

vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke*

*v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated'

in order to be disabled.").

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried

on certain daily activities, such as grocery shopping, driving a car, or limited walking for

exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v.*

*Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations

to be relevant to his or her credibility and noting that "disability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations"). Moreover,

particularly with certain conditions, cycles of improvement may be a common occurrence, and it

is error for an ALJ to pick out a few isolated instances of improvement over a period of months

or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See*

*Garrison*, 759 F.3d at 1017.

The activities relied on by the ALJ are the simple activities the Ninth Circuit has

repeatedly emphasized are not the type that undermine disability claims. When Plaintiff prepares

food, it is simple, such as packaged, frozen, or cheese and crackers. AR 184; *see also* AR 435-37

("I don't eat. I don't take care of myself nutritionally. . . . I don't cook for myself . . . ."). The

ability to watch television, do simple self-maintenance, prepare simple meals, drive, and do adult paint-by-numbers does not detract from Plaintiff's disability claims and does not contradict her testimony about her issues with concentration, memory, or ability to complete tasks.

### b.   Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the Court has rejected the other reason given by the ALJ, daily living activities, reliance on the lack of corroboration by objective medical evidence alone is insufficient.

### c.   Amount of Treatment

The Commissioner argues that the ALJ properly relied on Plaintiff's lack of treatment in discounting Plaintiff's testimony. The ALJ mentions Dr. Buitrago's opinion about Plaintiff's frequency of care, but only in "summariz[ing] the medical evidence of record." AR 401. The Commissioner argues that the Court can view the ALJ's entire opinion and consider the ALJ's "full explanation." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). The ALJ, however, did not use frequency of psychological treatment to discount Plaintiff's testimony. *See* AR 403-04. The Court must "review the ALJ's decision based on the reasoning and factual findings

offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The Commissioner's assertion that the ALJ relied on lack of treatment to discount Plaintiff's testimony is post hoc rationale that the Court disregards.

The Court concludes that the ALJ committed legal error because he does not provide specific, clear, and convincing reasons to reject Plaintiff's testimony. Properly credited, Plaintiff's testimony on her inability to understand and retain new information or concentrate at work shows that she may not meet the demands of competitive employment, and thus the error was harmful.

## D.  Lay Opinions of Plaintiff's Brother and Employer

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject (A) the statements of Plaintiff's brother, Clint, and (B) Plaintiff's employer. Clint stated that Plaintiff is easily distracted, forgets what she is doing, becomes hysterical under pressure, cries easily and often, lives in clutter, declines social invitations, and leaves family gatherings suddenly and without explanation. *See* AR 198-205; 243-245. Plaintiff's employer reported that Plaintiff was 50% less productive than other employees and required special assistance, fewer or easier duties, and lower production standards. *See* AR 166-68.

### 1.  Standards

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Even so, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted)).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores uncontradicted lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2. Application

#### a. Observations by Plaintiff's brother

The germane-reasons standard imposes a minimal obligation on the ALJ. *See, e.g.*, *Adams v. Astrue*, 2010 WL 761239, at *3 n.2 (C.D. Cal. Mar. 1, 2010) (describing standard as "low"). The ALJ provided germane reasons with specific analysis for discounting some of

Clint's statements. In the second and fourth functional areas of the paragraph B criteria, the ALJ identified inconsistencies, supported by specific parts of the record, to Clint's testimony that Plaintiff was a "shut-in" and unable to manage herself. AR 403-04. Because of the low standard applied to lay testimony, the ALJ's analysis on these points was sufficient.

That said, the ALJ erred in dismissing other of Clint's statements by relying on testimony of the state agency consultants, the consultative examiner, and the medical expert, or an unsupported reading of Dr. Telew's testimony (such as intact memory and attention span) because of the ALJ's improper weighing of that testimony, as discussed in Part B. This error applies to the ALJ's analysis of the first and third functional areas. AR 403-04 (citing Dr. Telew's reports of intact memory and attention span as reasons to discount Clint's statements on Plaintiff's forgetfulness and inability to concentrate). Moreover, on the third functional area, the ALJ does not provide a germane reason for how spending time online refutes Clint's statement that Plaintiff is easily distracted and unable to complete tasks. *See* AR 404. In these areas, the ALJ's analysis is insufficient to reject Clint's testimony. The error is not harmless because the testimony aligns with Plaintiff's testimony and an ALJ considering all evidence may be more persuaded to believe a claimant who has additional supporting testimony.

### b.  Employer's statement

The ALJ does not mention the statement of Plaintiff's employer, let alone provide a specific, germane reason to reject it. When an ALJ ignores uncontradicted lay witness testimony highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Here, a reasonable ALJ, fully crediting this statement, could have determined that Plaintiff's

impairments were severe. Thus the ALJ's failure to address the employer's highly probative

statement was harmful, legal error.

## E.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.

Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec.

Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison*, 759 F.3d at 999. The Court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has

been fully developed and there are no outstanding issues left to be resolved does the district court

consider whether the ALJ would have to find the claimant disabled on remand if the improperly

discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion

to remand for an award of benefits. *Id.* The district court retains flexibility and is not required to

credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

There appears little useful purpose in remanding yet again for further proceedings. The

record is fully developed. If properly credited, Dr. Telew's opinion that Plaintiff has limitations

in key mental work functions such that she would be off task in a work setting fifteen percent or more of workdays, *see* AR 656-63, would indicate that she is disabled. Vocational experts testified that that this extent of off-task activity precludes competitive employment. AR 56, 457. The employer's statement that Plaintiff was off task more than 50% of the time also would indicate that she has severe impairments and unable to be successfully employed. Plaintiff's subjective testimony and that of her brother, credited as true, further supports Plaintiff's claim of disability, because the testimony describes her inability to concentrate and complete tasks. As a result, the Court credits as true and remands for benefits. *See Kiran v. Kijakazi*, 2022 WL 2752539, at *1-2 (9th Cir. July 14, 2022).

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS this case for an immediate calculation of benefits.

**IT IS SO ORDERED**.

DATED this 6th day of January, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge